THOMPSON, Presiding Judge.
Barbara Jean Patterson (“the wife”) appeals from a judgment of the St. Clair Circuit Court divorcing her from Raymond Lindsey Patterson (“the husband”) and dividing the parties’ marital estate. For the reasons stated herein, we reverse the trial court’s judgment and remand the cause for the entry of a new judgment.
The parties married in 1989. One child was born of the marriage; she was 12 years old at the time of the trial. The parties separated in September 2008, and the husband subsequently filed a complaint for a divorce on January 20, 2009. During the pendency of the action, the parties entered into a pendente lite agreement providing, among other things, that the wife would have custody of the child, that the husband would have visitation with the child, that the husband would pay $683 as child support and $167 as spousal support to the wife every month, and that the husband would make the monthly payment of $317 on the van the wife drove.
The trial court held a bench trial of the action on April 5, 2010. Testimony at the trial revealed the following pertinent facts. The husband began working for his present employer, Honda Manufacturing of Alabama, LLC, in 2001. He stated that he works 40 hours per week, that he has an annual base salary of approximately $64,000, and that he does not work overtime on a regular basis. The CS-41 Child-Support-Obligation Income Statement/Affidavit that the husband filed with the court indicated that he earned $5,733 monthly. When it was pointed out that he earned approximately $91,500 a year in 2006 and 2007, the husband stated that his income had since decreased because of salary reductions and the elimination of overtime work brought on by poor economic conditions. The husband stated that he earned approximately $1,000 per year working on boats. He testified that he had accumulated “maybe” $30,000 in a retirement account with his employer, but he also admitted that the accumulated amount could possibly be more.
When the parties married, the wife was working as a welder, earning $10 or $12 per hour. She quit that job in 1996 at her doctor’s request because of her pregnancy with the parties’ child. The husband testified that the parties had agreed that the wife would return to work after a period following the birth of the parties’ child. He stated that the wife refused to do so, however.
Although the wife did not return to full-time employment, which, according to the husband, had caused problems in the parties’ marriage, the wife had worked as a school-bus driver for the last eight or nine years. She earned approximately $14,000 annually as a bus driver and had accumulated approximately $3,000 in a retirement account. During the marriage, the wife, who had a general equivalency diploma (“GED”), took some college courses related to computer-aided drafting, but she did not obtain á college degree.
The wife testified that she did not suffer from any condition that kept her from working at a job with more hours. She stated that the reason she had chosen to drive a school bus for her employment was so she could raise the parties’ child and not have to pay a babysitter. When asked if she had any prospect for increasing her income, she stated that she wanted to be there for the parties’ child. She stated that she was not able to maintain the standard of living to which she had become accustomed during the marriage.
*189 Before the parties separated, the parties lost their house in a foreclosure proceeding. At the time of their separation, the parties sold much of their personal property and divided the proceeds equally. At the time of trial, the wife was living in an apartment and the husband was living in a house with his girlfriend. The parties’ assets at the time of trial included their retirement accounts; the van the wife used on which the parties owed approximately $1,800 — $2,500; a truck the husband used on which the parties owed approximately $1,800 — $2,000; and an all-terrain vehicle on which the parties owed approximately $3,200-$3,600. The husband had had several medical procedures before the parties’ separation, and, at the time of trial, he still owed $1,000 in medical bills.
The husband testified that, in 2006 or 2007, he began making wine and moonshine. He testified that he sold the moonshine and that he and the wife consumed the wine. In April 2008, the husband attended a 90-day rehabilitation program because of his abuse of a prescription medication he had been taking since 1997. He testified that he had successfully completed the program and that he had not abused any drug or narcotic since then. He stated that he had had very little alcohol to drink since that time and that he no longer made wine and moonshine. In a document prepared while he was undergoing rehabilitation, the husband reported that he had struggled significantly with alcohol- and drug-related problems and that those struggles had affected his family and his family’s financial situation. The husband stated that, before the parties separated, he had attended some of the child’s basketball games in an intoxicated condition.
On May 3, 2010, the trial court entered a judgment divorcing the parties. In its judgment, the trial court awarded to each party the personal property (presumably including the vehicles they each normally drove) in his and her respective possession, and it awarded to each party, respectively, his and her retirement account. The trial court reserved the issue of alimony “as the [husband] is currently paying for the [vehicle] driven by the [wife].” The trial court awarded the parties “shared care, custody, and control” of their child, with the wife to “maintain the primary residence” for the child and the husband to “maintain the secondary residence” for the child. The husband was ordered to pay monthly child support of $685 and to maintain medical insurance for the child. The husband was also ordered to pay all the marital debts and to pay the $5,000 fee of the guardian ad litem the court had appointed for the parties’ child.
Within 30 days of the entry of the divorce judgment, the wife filed a motion that she titled “Petition to Modify Decree.” Although the motion set forth grounds cognizable under Rule 59(e), Ala. R. Civ. P., as a basis to alter, amend, or vacate the divorce judgment, the trial court treated the wife’s motion as having initiated a separate action seeking to modify the divorce judgment and denied it on the basis that the wife did not allege in her motion a material change in circumstance since the entry of the divorce judgment.
The wife appealed. On appeal, this court determined that the trial court had erred in treating the wife’s motion as a petition to modify the divorce judgment rather than as a Rule 59(e) motion to alter, amend, or vacate the divorce judgment. Patterson v. Patterson, 71 So.3d 699, 700-01 (Ala.Civ.App.2011). We reversed the trial court’s judgment denying that motion and remanded the cause with instructions that the trial court treat the motion as a Rule 59(e) postjudgment motion. Id. We ordered that the 90-day period in which to *190 rule on a postjudgment motion established by Rule 59.1, Ala. R. Civ. P., would begin to run on the date this court issued its certificate of judgment. Id. at 701.
On May 4, 2011, this court issued its certificate of judgment.[1] Subsequently, the wife’s motion was denied by operation of law, and the wife filed a timely appeal to this court.
The wife contends that the trial court erred when it failed to award her alimony and failed to award her any portion of the husband’s retirement account. Our review of this issue is well settled:
“Alabama law is well settled that property-division issues are within the trial court’s broad discretion, and a judgment must be plainly and palpably beyond the scope of that discretion before the judgment can be disturbed on appeal. See McClelland v. McClelland, 841 So.2d 1264, 1271 (Ala.Civ.App.2002). When dividing marital property, a trial court should consider several factors, including the length of the marriage; the age and health of the parties; the future prospects of the parties; the source, type, and value of the property; the standard of living to which the parties have become accustomed during the marriage; and the fault of the parties contributing to the breakup of the marriage. See Golden v. Golden, 681 So.2d 605, 608 (Ala.Civ.App.1996); see also Ex parte Elliott, 782 So.2d 308, 311-12 (Ala.2000), and Morrison v. Morrison, 540 So.2d 80, 81 (Ala.Civ.App.1989) (affirming division of property under which one spouse was awarded all the marital real property).
“ ‘A court has no fixed standard to follow in awarding alimony or in dividing marital property[; rjather the award or division need only be equitable and be supported by the particular facts of the case.’ Ex parte Elliott, 782 So.2d at 311; see also Hall v. Hall, 895 So.2d 299, 303 (Ala.Civ.App.2004). In examining whether the trial court acted within its discretion in dividing the parties’ property or determining whether to award alimony, an appellate court reviews the entire judgment. See O’Neal v. O’Neal, 678 So.2d 161, 164 (Ala.Civ.App.1996).”
Lowery v. Lowery, 72 So.3d 701, 705-06 (Ala.Civ.App.2011). With regard to periodic alimony, this court has stated: “The purpose of periodic alimony is to support the former dependent spouse and to enable that spouse, to the extent possible, to maintain the status that the parties enjoyed during the marriage, until the spouse is self-supporting or maintaining a lifestyle similar to the one enjoyed during the marriage.” Yohey v. Yohey, 890 So.2d 160, 168 (Ala.Civ.App.2004).
The parties were married more than 20 years. The final judgment awarded the husband his truck, an all-terrain vehicle, and his retirement account, which he testified had “maybe” $30,000, and possibly more than that, in it. The final judgment also ordered the husband to pay the marital debt, which appears from the record to amount to between $7,800 and $9,100, and the guardian ad litem’s fee of $5,000. The final judgment awarded the wife her van and her retirement account, in which she had accumulated approximately $3,000. The husband, who has a college education, earns a salary of at least *191 $64,000 annually, and, in the past, has earned substantially more than that. The wife, who has a GED and no college degree, earns approximately $1,150 per month. The wife testified that she is not able to maintain the standard of living to which she had become accustomed during the marriage.
Given the length of the parties’ marriage, the wide disparity in income between the parties, and a division of marital property that appears to favor the husband, we conclude that the trial court erred to reversal when it failed to award the wife some amount of periodic alimony. See Lowery, 72 So.3d at 706 (reversing trial court’s judgment failing to award periodic alimony to wife because of wide disparity in the parties’ income); Allen v. Allen, 53 So.3d 960, 965-66 (Ala.Civ.App.2010) (reversing periodic-alimony award of $600 as inadequate when husband’s monthly net income was $3,000 and wife’s monthly disability income was $600).
The issues of alimony and property division are intertwined. See Lowery, 72 So.3d at 706. Because we are reversing the trial court’s judgment for failing to award the wife periodic alimony, we pre-termit discussion of the wife’s argument that the trial court should have awarded her a portion of the husband’s retirement account. On remand, the trial court will have the opportunity to reconsider its division of the parties’ marital property when determining the issue of periodic alimony.
The wife also contends that the trial court erred when it failed to award her an attorney fee. In Lowery v. Lowery, 72 So.3d at 706, we pretermitted discussion of the same issue under similar circumstances, writing:
“Because we are reversing the judgment for failure to award the wife some amount of spousal support, we pretermit discussion of the lack of an attorney-fee award to the wife. We simply note that certain “‘[fjactors to be considered by the trial court when awarding such fees include the financial circumstances of the parties, the parties’ conduct, the results of the litigation, and, where appropriate, the trial court’s knowledge and experience as to the value of the services performed by the attorney.” ’ Glover v. Glover, 678 So.2d 174, 176 (Ala.Civ.App.1996) (quoting Figures v. Figures, 624 So.2d 188, 191 (Ala.Civ.App.1993)). Considering the outcome of the litigation and the wife’s minimal income, an attorney-fee award on remand may be appropriate.”
We adhere to our determination in Lowery and leave it to the trial court to consider on remand whether to award the wife an attorney fee.
Based on the foregoing, we reverse the trial court’s judgment and we remand the cause for the entry of a new judgment consistent with this opinion.
REVERSED AND REMANDED.
PITTMAN and BRYAN, JJ., concur.
THOMAS and MOORE, JJ., concur in the result, without writings.

. On April 18, 2011, before this court had issued its certificate of judgment, the trial court purported to enter a judgment denying the wife’s postjudgment motion. Because the certificate of judgment had not yet been issued, the trial court was without subject-matter jurisdiction when it purported to enter that judgment. Thus, the judgment was void. See Raybon v. Hall, 17 So.3d 673, 675 (Ala.Civ.App.2009).